[No. 27939. Department Two. April 25, 1940.]

THE STATE OF WASHINGTON, *on the Relation of G. W. Hamilton, as Attorney General, Plaintiff,* v. THE SUPERIOR COURT FOR WHATCOM COUNTY, *Hobart S. Dawson, Judge, et al., Respondents.*[1]

[1] Reported in 101 P. (2d) 588.

*The Attorney General* and *John E. Belcher, Assistant,* for relator.

*Edw. E. Johnson* and *F. M. Hamilton,* for respondents.

GERAGHTY, J.—The prosecuting attorney of Whatcom county filed in the superior court an information in the nature of *quo warranto*, seeking to oust Julius W. Austin, one of the commissioners of Whatcom county, for the second district, from office. The ground alleged in the information for the ouster was that, in an action brought by Whatcom county against Austin and others, it was found by the superior court that certain of the defendants, including Austin, had wilfully and unlawfully appropriated and converted to their own use two rock crushers and other appliances belonging to the county, of the value of six hundred dollars. For this sum, the county was awarded a judgment against the defendants. The judgment ran against the Firemen's Fund Indemnity Company, surety on Austin's official bond, which was named as a defendant in the action.

The prosecuting attorney based the *quo warranto* proceeding upon the provisions of Rem. Rev. Stat., § 9950 [P. C. § 2349], reading as follows:

"Every office shall become vacant on the happening of either of the following events before the expiration of the term of such officer: . . .

"8. Whenever a judgment shall be obtained against such officer for breach of the condition of his official bond."

It is alleged in the information that, by the recovery of the judgment by the county against Austin and the

surety on his official bond, the office of commissioner held by him became vacant.

After institution of the *quo warranto* proceeding, the attorney general addressed a letter to the prosecuting attorney, saying:

"It has come to my attention that you have instituted quo warranto proceedings against Julius W. Austin, County Commissioner, based upon the entry of a judgment in a civil action against him by you, on which an appeal has been taken to the Supreme Court and supersedeas filed. The alleged transaction out of which the suit arose clearly was during the commissioner's first term of office and furnishes no basis for your contention contained in paragraph X of your complaint for attempting to invoke the provisions of Rem. Rev. Stat., Sec. 9950-(8). . . .

"Under the authority vested in me under the provisions of Rem. Rev. Stat., Sec. 116, I hereby instruct you to forthwith dismiss this proceeding.

"Please advise me at once whether or not you intend following this instruction."

The prosecuting attorney by letter advised the attorney general that he did not intend to follow his instruction to dismiss the proceeding. Whereupon, the attorney general made application to the superior court of Whatcom county for a writ of prohibition to restrain the prosecuting attorney from further proceeding in the *quo warranto* action. After hearing, an order was entered denying the writ. This order is now before us on *certiorari* for review.

While the record discloses that some evidence was heard by the court before entry of its order, the evidence is immaterial, since the sole issue involved is one of power and is to be resolved by reference to the applicable provisions of the constitution and statutes.

The offices of attorney general and prosecuting attorney are recognized in the state constitution. Article III, § 1, of that instrument names the attorney general

as one of the state officers to be elected by the voters, and § 21 of the same article prescribes his duties as follows:

"The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law."

Article XI, § 5, provides that the legislature shall, by general and uniform laws, provide for the election in the several counties of certain officers, among them prosecuting attorneys, and shall prescribe their duties and fix their term of office.

Chapter 92, Laws of 1929, p. 177, is a comprehensive act "relating to and defining the powers and duties of the attorney general and repealing certain acts relating thereto."

Section 3, subd. 4, of the act, p. 178 (Rem. Rev. Stat., § 112 [P. C. § 6574-3], subd. 4), provides that the attorney general shall have the power, and it shall be his duty,

"To consult with and advise the several prosecuting attorneys in matters relating to the duties of their office, and when, in his judgment, the interests of the state require, he shall attend the trial of any person accused of a crime, and assist in the prosecution."

Rem. Rev. Stat., § 113 [P. C. § 1780], provides that

"Prosecuting attorneys are attorneys authorized by law to appear for and represent the state and the counties thereof in actions and proceedings before the courts and judicial officers."

Rem. Rev. Stat., § 116 [P. C. § 1786], provides that the prosecuting attorney of each county

". . . shall have authority and it shall be his duty, subject to the supervisory control and direction of the attorney general, to appear for and represent the state and the county . . . in which he is a prosecuting attorney, in all criminal and civil actions and

proceedings in such county in which the state or such county . . . is a party."

Rem. Rev. Stat., § 4130 [P. C. § 1788], provides:

"Each prosecuting attorney shall be the legal adviser of the board of county commissioners for the county for which he was elected; he shall also prosecute all criminal and civil actions in which the state or his county may be a party, defend all suits brought against the state or his county, and prosecute all forfeited recognizances, bonds, and actions for the recovery of debts, fines, penalties, and forfeitures accruing to the state or his county: Provided, the commissioners of any county may employ other attorneys, when they may deem it for the interest of their county."

With reference to the specific question here involved, the filing of informations in the nature of *quo warranto,* Rem. Rev. Stat., § 1034 [P. C. § 8398], provides that an information may be filed against any person or corporation

" . . . 1. When any person shall usurp, intrude upon [into,] or unlawfully hold or exercise any public office or franchise within the state, or any office in any corporation created by the authority of the state;
"2. When any public officer shall have done or suffered any act, which, by the provisions of law, shall work a forfeiture of his office; . . ."

It is provided in Rem. Rev. Stat., § 1035 [P. C. § 8399]:

"The information may be filed by the prosecuting attorney in the superior court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise, or corporation which is the subject of the information."

The right of the attorney general to direct the prosecuting attorney to dismiss the *quo warranto* pro-

ceeding is not asserted in virtue of any power affirmatively conferred upon him by chapter 92, Laws of 1929, defining his powers and duties. As we have seen, by that act, it is his duty to *"consult with and advise"* the several prosecuting attorneys in matters relating to the duties of their office, and when, in his judgment, the interests of the state require it, to attend the trial of any person accused of a crime and assist in the prosecution.

The attorney general's claim of power is solely based upon the language of Rem. Rev. Stat., §. 116, authorizing the prosecuting attorney, subject to the *"supervisory control and direction of the attorney general,"* to represent the state and the counties in all criminal and civil actions.

It is to be noted that this section of the revised statutes was first enacted by chapter 55, Laws of 1891, p. 95, § 7, and amended by chapter 75, Laws of 1911, p. 375. The 1891 act also prescribed the duties of the attorney general in language substantially like that employed in chapter 92, Laws of 1929. These various provisions, referring to the powers and duties of the attorney general and the prosecuting attorneys, are to be construed as being *in pari materia.*

As so construed, it would seem that the reasonable construction of Rem. Rev. Stat., § 116, should be that the measure of *"supervisory control and direction"* to be exercised by the attorney general is that vested in him by chapter 92, Laws of 1929, defining his duties and powers; that is to say, the right *"to consult with and advise"* the several prosecuting attorneys in matters relating to the duties of their office, and, when the interests of the state require, to assist in the prosecution of criminal offenses, and the further powers conferred by the provisions of chapter 88, Laws of 1937,

p. 344 (Rem. Rev. Stat. (Sup.), § 112-1 [P. C. § 6574-14a]).

By that act, the governor is authorized to request the attorney general to investigate violations of the criminal laws of the state, and if, after investigation, he believes that the laws are improperly enforced in any county, and that the prosecuting attorney has failed or neglected to institute and prosecute violations of such criminal laws, he is authorized to direct the prosecuting attorney to take such action, in connection with any prosecution, as the attorney general determines to be necessary. If the prosecuting attorney, after receipt of such instructions from the attorney general, shall fail or neglect to comply within a reasonable time, the attorney general is authorized to initiate and prosecute such criminal actions as he shall determine, and from the time he shall have initiated or taken over the criminal prosecution, the prosecuting attorney shall have no power or authority to take any legal steps relating to such actions, except as authorized and directed by the attorney general.

If the attorney general had already, in virtue of Rem. Rev. Stat., § 116, possessed the power asserted by him here, there would have been no necessity for the enactment of the 1937 law. This law illustrates, we think, what was intended by the words, *"supervisory control and direction,"* used in Rem. Rev. Stat., § 116; that is to say, that the prosecuting attorney was empowered to perform certain duties, subject to such *"supervisory control and direction"* as might be substantially conferred by law upon the attorney general.

But whatever may be the relation of the attorney general to the prosecuting attorneys with respect to other duties and powers, it is clear that, by Rem. Rev. Stat., § 1035, the right to file an informa-

tion in the nature of *quo warranto* is vested in the prosecuting attorney, to be exercised by him, in the language of the statute, *"whenever he shall deem it his duty to do so."*

The case of *State ex rel. Attorney General v. Seattle Gas & Electric Co.,* 28 Wash. 488, 70 Pac. 114, is, we think, decisive on this point. In that case, the attorney general filed an information in the nature of *quo warranto,* directed against the Seattle Gas and Electric Company, challenging that company's right to the exercise of a franchise in the city of Seattle. Passing upon the right of the attorney general to institute the action, the court cited Bal. Code, § 5781 (Rem. Rev. Stat., § 1035), and said:

"Here we have an express statute conferring the power sought to be exercised by the attorney general in this case on another officer, created by the same power that created the office of attorney general.

"The appellant assumes that the attorney general of this state, by virtue of his office, is, like the attorney general of England, clothed with common-law power to institute this suit, as it was the duty of the attorney general under the common law to represent the crown in such actions as this, and that therefore the attorney general of this state on his own motion can institute this suit. Political power in this state inheres in the people, and by constitutional or statutory authority the exercise of this power in behalf of the people is delegated to certain officers. In the exercise of power the officer is controlled by the law theretofore declared. The attorney general of the state, although bearing the same title as the attorney general of England, is not a common-law officer. There is nothing in a mere name. Because the particular office filled by the relator is called the office of 'attorney general,' it does not follow therefrom that he has the same powers as the attorney general of England under the common law. Every office under our system of government, from the governor down, is one of delegated powers."

And the court, after further discussion of the powers of the attorney general and the prosecuting attorney, continues:

"Nowhere is there any express provision of the law authorizing the attorney general to institute the suit in question. The constitution provides for the creation of the office of prosecuting attorney, and this officer is as much a constitutional officer as the attorney general."

Commenting on the language of Bal. Code, § 4757 (Rem. Rev. Stat., § 116), the court says:

"This section subjects the prosecuting attorney to the direction and supervisory control of the attorney general in bringing and maintaining actions, but makes it none the less the duty of the prosecuting attorney to appear and represent the state, notwithstanding the direction and supervisory control over him by the attorney general. This section, as it is a part of the same act, must also be read in connection with § 4754, Bal. Code [Rem. Rev. Stat., § 113], which is as follows:

" 'Prosecuting attorneys are attorneys authorized by law to appear for and represent the state and the counties thereof in actions and proceedings before the courts and judicial officers.'

"The statute having expressly designated the prosecuting attorney as the officer authorized to file the information, either on his own motion whenever he shall deem it his duty so to do, or when directed by the court or other competent authority, we think he is the only officer who on his own motion can institute this proceeding."

The order denying the writ of prohibition is affirmed.

BLAKE, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.